*220 OPINION OF THE COURT
Titone, J.
Defendant was identified as a mugger during a canvassing of the crime scene undertaken by the police and the victim in a patrol car for purposes of identifying the perpetrators. The question we must decide is whether the courts below properly concluded that the allegedly spontaneous nature of an identification rendered a Wade hearing regarding the procedure unnecessary. We conclude that the suppression court’s summary denial of defendant’s motion for a Wade hearing was improper, since the canvassing was a police-spansored procedure conducted for the purpose of obtaining an identification. Because the parties’ submissions did not establish, as a matter of law, that the identification was free from the risk of police suggestion, defendant was entitled to a Wade hearing to test the propriety of the procedure and the risk of misidentification.
I
At approximately 11:00 p.m. on September 17, 1990, complainant Harold Knowings was robbed by a group of men as he left a grocery store in Brooklyn. The transit police drove the victim through the streets near the crime scene in a marked police van to search for the perpetrators. During this "canvass,” the victim pointed to defendant on the street and identified him as one of the robbers. Based on this identification, defendant was immediately arrested and charged with second degree robbery, fourth degree grand larceny and second and third degree assault.
The People notified defendant that the complainant had made a "corporeal non-lineup identification” in the presence of the police. Defendant sought omnibus relief, including a *221 Wade hearing to challenge "the propriety of the identification procedures used” to identify him as one of the perpetrators. Defendant alleged that the identification procedure "utilized by law enforcement officials * * * [was] unfair, creating a substantial likelihood of misidentification.” In response to the motion, the People alleged that defendant "was pointed out to the police by the complainant during a canvass of the area surrounding the scene of the crime.” Thus, the People concluded that "there was no police-arranged procedure surrounding the identification in this case, and defendant is therefore not entitled to a hearing on the issue.”
Citing the People’s representation that the complaining witness sua sponte pointed out defendant during an area canvass, the suppression court concluded that the identification was not "police sponsored,” and summarily denied the motion for a Wade hearing. At trial, Knowings, the sole identifying witness, testified as to his out-of-court identification of defendant and identified defendant in court as one of the gang of men who attacked him in the grocery store and stole his bag. Taking the stand in his own defense, defendant testified that he was near the scene of the crime at the time of the incident, but that the complainant had mistakenly selected him as one of the robbers. Defendant was convicted by a jury of second degree robbery.
The Appellate Division affirmed the conviction, holding that defendant’s motion for a Wade hearing was properly denied "because the complainant’s identification of the defendant was made spontaneously and was not the product of an identification procedure arranged by the police.” (201 AD2d 581, 582.) Defendant’s appeal is before us by permission of a Judge of this Court.
II
Our analysis begins with CPL 710.60, the statute which governs suppression motions and their disposition. Subdivisions (2), (3) and (4) together establish that a court must conduct a hearing and make findings of fact in determining the motion, unless a summary grant or denial of the motion is authorized therein. Generally, a suppression motion may be summarily denied "if no legal basis for suppression is presented or if the factual predicate for the motion is insufficient as a matter of law” (People v Rodriguez, 79 NY2d 445, 452, citing CPL 710.60 [3]).
*222 As a preliminary matter, defendant cannot be faulted for failing to allege in his pleadings particularized facts describing the nature and circumstances of the "point-out” in the police car. Alleging facts to support a motion to suppress testimony concerning an out-of-court identification is a burden that a defendant no longer carries on a motion for a Wade hearing (see, CPL 710.60 [3] [b] [1995]). As this Court has previously explained, the 1986 amendments to CPL 710.60 (3) (b) relieved a defendant of the obligation to plead facts concerning a "previous identification of the defendant by the prospective witness” (CPL 710.20 [6]), "likely for the reason that in many instances a defendant simply does not know the facts surrounding a pretrial identification procedure and thus cannot make specific factual allegations” (People v Rodriguez, 79 NY2d 445, 453, supra). That pleading dilemma can be no more apparent than in this case, where defendant was not present in the police car at the time of the identification and could not know whether the witness’ selection of him was due to police commentary or prompting. Indeed, prior to his receipt of the People’s responsive pleadings, defendant may have been unaware that he was apprehended as a result of a "canvass.” Accordingly, a defendant’s failure to plead sufficient facts in support of the motion to suppress testimony of a prior identification is not a proper ground to summarily deny a motion for a Wade hearing (id.).
Turning to defendant’s entitlement to a Wade hearing under the allegations before the motion court, we note that the purpose of the Wade hearing is to test identification testimony for taint arising from official suggestion during "police-arranged confrontations between a defendant and an eyewitness” (People v Gissendanner, 48 NY2d 543, 552; People v Newball, 76 NY2d 587, 591). Such suggestion can impair the reliability of the identification and is at odds with the fundamental due process right to a State-sponsored pretrial identification procedure designed to "eliminate or minimize the risk of convicting the innocent” (People v Collins, 60 NY2d 214, 218).
Our precedent does not support a restrictive definition of "police-arranged” procedures (see, dissenting opn, at 228). Drawing the line between State-prompted identification procedures and identifications "resulting from spontaneous and unplanned encounters,” the Court stated in People v Newball (76 NY2d 587, 591), that the due process concerns underlying the notice provisions of the Criminal Procedure Law (see, CPL *223 710.30) are implicated whenever "identification procedures * * * come about at the deliberate direction of the State.”
Viewed against this backdrop, we reject the conclusion urged by the People and reached by the Appellate Division that the fact that the complaining witness "spontaneously” pointed out defendant removed the identification procedure— here, the canvassing — from the category of police-sponsored viewings that warrant a Wade hearing. That flawed conclusion results from the Court’s confusion of two entirely distinct concepts: witness-initiated procedures and witness-initiated identifications. An identification by a witness may be "spontaneous” in the sense that it is unprompted, yet still be the product of a police-arranged procedure. For example, a victim may reflexively point out the perpetrator during a viewing of a videotape of passersby that was made and supplied by the police (see, People v Edmonson, 75 NY2d 672, 678). In those circumstances, the identification could fairly be characterized as "spontaneous”, but no one would dispute that the procedure was "police-arranged.” In contrast, a true "spontaneous” procedure would exist where a complainant flags down a police officer and then points to the attackers on the street less than two blocks away (see, People v Rios, 156 AD2d 397, 398).
Here, the canvassing of the crime area in the police car was an identification procedure undertaken at the "deliberate direction of the State.” It is undisputed that the victim was escorted to the crime scene by police, indicating that this was a confrontation arranged for the distinct purpose of identifying the perpetrators of the mugging (see, People v Berkowitz, 50 NY2d 333, 338, n 1). This planned identification encounter is distinguishable from those non-police-sponsored identifications resulting from mere happenstance, such as where a witness is present in police headquarters for some purpose other than to effectuate an identification, and by chance views and identifies a suspect who is being processed in another room. Accordingly, based on the pleadings on the motion, the suppression court and the Appellate Division improperly concluded that no Wade hearing was warranted because the procedure employed to gain the identification of defendant was not "police-arranged.”
Indeed, to the extent that this Court has recognized exceptions to the general requirement of a Wade hearing, they have been narrowly confined to those circumstances, not present here, where either the prior identification is merely "confirma *224 tory” (see, People v Wharton, 74 NY2d 921, 922), or where "the protagonists are known to one another” (see, People v Gissendanner, 48 NY2d 543, 552, supra). Confirmatory procedures are not subject to testing in Wade hearings because the risk of misidentification is slight in view of the presence of such factors as the identifying officer’s expertise and the proximity of the identification to the time and scene of the crime (People v Wharton, 74 NY2d, at 922, supra). Likewise, a hearing is not necessary in the case of an identifying witness who is familiar with the perpetrator because that witness will naturally be "impervious to police suggestion” (People v Rodriguez, 79 NY2d, at 452, supra). No similar policy justification supports a summary denial of a Wade hearing, where, as here, no firm prior relationship is established, because in such cases "it would be unrealistic to ignore the possibility that police suggestion may improperly influence the witness in making an identification” (People v Collins, 60 NY2d 214, 219, supra). That the requirement of a Wade hearing remains the rule, and not the exception, corresponds with the belief that " ' "[t]he influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other factor” ’ ” (People v Edmonson, 75 NY2d, at 676, supra).
Without the benefit of a Wade hearing, the courts below could not conclude as a matter of law that the witness’ identification of defendant from the police van was spontaneous and not subject to any degree of police suggestion. Indeed, in their responsive pleadings on the Wade motion, the People did not represent that the victim "spontaneously” identified defendant. Rather, they merely asserted that defendant "was pointed out to the police by the complainant during a canvass”. Clearly, the possibility that the "point out” was preceded or precipitated by police prompting is not foreclosed. Indeed, the circumstances in this case are not different in principle from a traditional lineup, where the police orchestrate the panel to be viewed and accompany the victim while he or she scans the subjects. In sum, nothing about the procedure employed here rendered the witness "impervious to police suggestion” (see, People v Rodriguez, 79 NY2d, at 452, supra) or obviated the need for the courts to closely examine the circumstances surrounding the identification. Thus, a Wade hearing was required to enable the parties to explore the true nature of the facts surrounding the particular identi *225 fication — circumstances not ascertainable in the absence of a hearing.
Defendant’s remaining contention lacks merit.
The case should be remitted to Supreme Court for a Wade hearing to determine whether any police suggestiveness tainted the identification procedure. If so, defendant is entitled to a new trial and such further proceedings as the circumstances may warrant. If the People are successful at the Wade hearing, the judgment of conviction and sentence should be amended to reflect that result.
Accordingly, the order of the Appellate Division should be modified in accordance with this opinion and, as so modified, affirmed.